GEORGE SCOTT, APPELLANT, v. FRANCES M. SLINGER-
LAND, AS EXECUTRIX, ETC., OF THOMAS B. SLINGERLAND,
DECEASED, RESPONDENT.

*Evidence — right of a witness to read a paper to refresh his memory — what declara-
tions of a person who is alleged to have signed a lost contract may be proved to
establish its existence — when to prove its contents.*

This action was brought by the plaintiff to recover for labor and services alleged
to have been performed for the defendant's testator, T. B. Slingerland, pursu-
ant to a written contract for the manufacture and sale of a compound, known
as "The Old Homestead Wild Cherrry Bitters," in a bottle for which the
plaintiff had the patent.   Upon the trial, the plaintiff being unable to produce
the original contract, and the defendant having failed to produce it after having
been notified to do so, the plaintiff produced what was claimed to be a copy of
the original paper, which was dated April 20, 1865, and purported to be executed
by both parties and witnessed by one G. S. Armstrong, and called a witness,
who testified that he was acquainted with the handwriting of the parties to the
alleged agreement; that he saw an original paper in New York, which was
signed by the plaintiff and Slingerland; that seals were opposite the names;
that he read the paper; that the paper was in a safe, the key of which he had,
that at the request of the plaintiff he took the paper from the safe and made a
copy of it, and that the paper produced by the plaintiff was that copy; that the
original paper was not in the handwriting of the paintiff or Slingerland, and
that he could not tell in whose handwriting it was; that the safe was afterwards
removed to Slingerland's residence, the paper being then in the safe, since which
time he had never seen it.

The plaintiff then called an attorney, who testified that he drew a contract
between the plaintiff and Slingerland; that it was in reference to the manu-
facture of wild cherry bitters; that he drew it at the suggestion of both the
parties; that he did not keep it, and thought he delivered it to one of the par-
ties to draw a copy for the other; that he thought the paper was executed in
his presence; that he could not state the contents of the paper with any
definiteness, that he only knew to what it referred.   He was then asked to
read the paper produced by the plaintiff and then state all he recollected of the
contents " of the contract he drew."   Upon the objection of the defendant that
the witness had no right to look at the paper and then give his evidence the
referee refused to allow the witness to answer.

*Held*, that he erred in so doing.

That if the witness had been allowed to refer to and read the paper his recollec-
tion might have been refreshed, his memory quickened, and he thereupon
might have been able to state the contents of the paper which he drafted.

*Huff* v. *Bennett* (2 Seld., 338) followed.

The plaintiff called another witness, who testified that he had been acquainted with both the parties and had seen them at the manufactory; that he had seen and heard the paper read more than once; that he heard Slingerland speak of it in conversation with the witness' father; that he had seen Slingerland write, and knew his handwriting; that the paper was signed by both Scott and Slingerland, and that there were seals after their names. He was then asked questions as to whether the paper provided for or referred to the manufacture of Old Homestead Wild Cherry Bitters; and was also asked to state its contents and what he had heard Slingerland say as to its contents, and what he had heard him say as to the terms of employment between him and the plaintiff. Objections to those questions as incompetent and immaterial, and that the contract claimed by the plaintiff to be in writing was the best evidence, were sustained by the referee.

*Held*, that he erred in so doing, as the questions called for evidence which would tend to establish the existence of the original paper and the contents thereof.

APPEAL from a judgment entered, upon the report of a referee, in Oneida county dismissing the plaintiff's complaint, with costs.

Action by the plaintiff to recover for labor and services alleged to have been performed for defendant's testator, at his request, under an employment and in pursuance of a contract in the manufacture and sale of a compound known as "The Old Homestead Wild Cherry Bitters," in a peculiarly shaped bottle, for which the plaintiff held the patent, which bottle was known as a "cottage bottle." The referee has found as a fact, viz.: "That there was no contract entered into between George Scott, the plaintiff in this action, and said Thomas B. Slingerland, deceased, as appears in the paper offered and received in evidence, marked Exhibit 2, and that the evidence fails to show that any cause of action stated in the complaint in this action existed in favor of the said plaintiff as against the said defendant."

Exhibit 2, produced by the plaintiff upon the trial, is claimed to be a copy of an original paper theretofore existing between the plaintiff and the testator, and it was used as secondary evidence of such contract and received as such. It bears date April 20, 1865, and purports to have been executed by the parties thereto, and to have been witnessed by J. S. Armstrong. Plaintiff was unable to produce the original upon the trial, but gave evidence tending to show that it was kept in a safe of the defendant. Notice was given to produce the original contract. Plaintiff produced as a witness Jerome B. Seely, who testified he was acquainted with the handwriting of

the parties to the alleged agreement, and that he saw an original paper of which Exhibit 2 is a copy, and that the original was taken from a safe and shown to him in New York and that he read it, and that "after they stopped manufacturing bitters I had the safe key, and I was at the manufactory and in charge of it for some purpose; while I had the safe key I made a copy of this paper at the request of George Scott; I took the paper out of the safe to copy it, and after I copied it I put the original back in the safe and locked up the safe; the safe was removed to T. B. Slingerland's residence, on James street, Rome; I helped to remove it; the papers were taken out immediately before the safe was removed, and this paper was among them; the papers were all put back into the safe and the safe put into a wagon and removed to Slingerland's house; after the safe was at Slingerland's house I did not see this paper; this is the copy of the paper I referred to and made; the paper is all in my handwriting, and written by me as a copy of the original; the original of this paper had the signatures of Scott and Slingerland; the original was the same paper I had seen in New York and read; the original had seals opposite the names; I could not tell in whose handwriting the original paper was; it was not the writing of Slingerland or Scott; the original was the same one I had seen in New York and Rome; I did not know Armstrong's handwriting, but it purported to be witnessed by him, as copy appears." Thereupon the copy was offered and received in evidence, and marked Exhibit 2.

Evidence was given tending to show that the original of which Exhibit 2 was a copy was kept in the safe of the deceased and was last seen in his possession. Notice to produce the original paper was given to the defendant. At the close of the plaintiff's evidence a motion was made to dismiss the complaint on the ground that "the alleged agreement on which this action is based has not been proved to have been made, executed and delivered by deceased, T. B. Slingerland." Motion was reserved. Defendant thereupon gave evidence tending to show that no such original agreement ever existed. Plaintiff gave some replying evidence, but the principal question of fact upon which the decision of the referee has turned was whether or no such an original paper was ever in existence.

*C. D. Prescott,* for the appellant.

*E. L. Stevens* and *William Kernan*, for the respondent.

Hardin, P. J.:

In *Nichols* v. *The Kingdom Iron Ore Company* (56 N. Y., 618) it was held that secondary evidence of the contents of a written instrument when allowed does not obviate the necessity of proving the genuineness of the instrument, but renders it more imperative. In addition to the testimony of the witness who had made the copy, Exhibit 2, and who gave testimony tending to establish the existence of an original agreement from which the copy was made, the plaintiff offered further testimony to establish the existence of the original agreement. He called John B. Elwood, an attorney, who formerly resided at Rome, and proved by him that he drew an agreement between the plaintiff and the deceased. He testified as follows : " I drew a contract between Scott and Slingerland ; the paper I drew was in reference to the manufacture of Wild Cherry Bitters, if I remember rightly ; I drew it at the suggestion of both the parties, Scott and Slingerland ; I did not keep the paper after I drew it, and I do not know whether or not I drew copies for each of them ; I drew, as far as I recollect, only the original, and delivered it to one of the parties to draw a copy for the other ; I think the paper was executed in my presence ; I am not absolutely certain, but speak from general recollection ; since I drew the paper I do not know that I have ever seen it ; I cannot state the contents of that paper with any definiteness, I only know to what it referred ; I have not read Exhibit No. 2, now ; all I can state as to the contract I drew is that it referred to the manufacture of Wild Cherry Bitters. Plaintiff's counsel requests witness to read Exhibit No. 2, and then state all he recollects of the contents of the contract he drew. Defendant objects to it as incompetent and immaterial. Witness has no right to look at Exhibit No. 2, and then give his evidence. Objection sustained and exception for plaintiff. The paper, as drawn, was drawn as directed by Scott and Slingerland ; I drew the paper myself."

We are of the opinion that the exception just quoted presents an error. If the witness had been allowed to refer to and read Exhibit No. 2, his recollection might have been refreshed, his memory

quickened, and he thereupon might have been able to state the contents of the paper which he drafted. It is to be observed that the question, as propounded, calls for the recollection of the witness of "the contents of the contract he drew." We think it was allowable to put Exhibit 2 in the hands of the witness, and after that it was competent for him to "state all he recollects of the contents of the contract he drew.

The question seems to be decided by *Huff* v. *Bennett* (2 Selden, 338). JEWETT, J., said in that case, viz.: "Although the rule is that a witness in general can testify only to such facts as are within his own knowledge and recollection, yet it is well settled that he is permitted to assist his memory by the use of any written instrument, memorandum or entry in a book, and *it is not necessary* that such writing should have been made by the witness himself, or that it should be an original writing, provided, after inspecting it, he can speak to the facts from his own recollection." Numerous authorities are cited in support of the proposition. We will not attempt to review the authorities, but content ourselves with following the authority from which the quotation has just been made. We are of the opinion the plaintiff was entitled to the evidence which was excluded.

Second, plaintiff produced the witness Watson, who had been acquainted with the parties and seen them at the manufactory. He testified, viz.: "I have heard a paper read while I was at the manufactory; Scott produced it, and I have seen it and heard it read more than once; I never heard it talked of in the presence of Slingerland, in the factory; I have heard Slingerland speak of it in conversation with my father when I was present; I saw and heard it during the years I was living in Rome; I have had it in my hands and read it; I have seen Slingerland write and know his handwriting; this paper that I saw was signed by both Scott and Slingerland, and there were seals after their names; Mr. Scott showed me the paper; he took it from the safe in the factory and apparently returned it to the safe; he took it to the safe and after so doing I did not see it in his possession." Thereupon the witness was asked the following questions, viz.: "Q. Was that paper with reference to Old Homestead Wild Cherry Bitters? [Objected to as incompetent and immaterial; paper the best evidence; not shown, lost or destroyed. Objection sustained and exception for plaintiff.]

Q. Did that paper provide for the manufacture of Old Homestead Wild Cherry Bitters and syrups, and the terms with reference to Scott for same? [Objected to, same as last before. Objection sustained and exception for plaintiff.] Q. State the contents of that paper. [Objected to as before. Objection sustained and exception for plaintiff.] I have heard Slingerland speak as to the contents of this paper. Q. State what he said in reference to it? [Objected to as incompetent and immaterial; contents of paper not proven; not best evidence; paper not lost or destroyed. Objection sustained and exception for plaintiff.] I heard Slingerland speak of the terms of employment between him and Scott. Q. State what Slingerland said in reference thereto? [Objected to as incompetent and immaterial, and the contract claimed by Scott was claimed to be in writing, and not best evidence. Objection sustained and exception for plaintiff.] I heard Slingerland state the terms of the arrangement between him and Scott, with reference to the bitter and syrup manfactory. Q. State what he said in reference thereto? [Objected to as last before. Objection sustained and exception for plaintiff.] "

We are of the opinion that the referee fell into an error in making the rulings which we have just quoted. Some of the questions called for testimony which would tend to establish the existence of the original paper. Under the circumstances disclosed by the evidence, we are of the opinion that the plaintiff was entitled to the evidence, which tended to establish the existence of the original paper, proposed to be given by the witness under examination. The fact did appear that the original paper was last in the possession of the deceased, and it was incumbent upon the plaintiff to establish (1) the existence of the original paper, and (2) he had a right to use the contents thereof to bear upon the question of the existence of the original paper. If the defendant had occupied the attitude of conceding that Exhibit 2 was a copy of the original paper, undoubtedly that copy would be the best evidence to be relied upon as to the contents of the original paper. However, inasmuch as the defendant was in the attitude of disputing the genuineness of the copy, as well as the principal fact which the plaintiff was seeking to establish, to wit, the existence of the original, of which Exhibit No. 2 was a copy, we think it was allowable to give the

declarations of the deceased " as to the contents of the paper." One of the questions which was objected to called for the declarations of the deceased in respect to the contents of the paper. If the witness had been allowed to give what the deceased " said in reference to it," the evidence would have strongly tended to establish the existence of the original paper. We are aware that there were very many strong circumstances and much evidence given by the defendant upon the trial of this issue, tending to show that there never existed an original paper of the kind claimed by the plaintiff. On the other hand, the plaintiff had given considerable evidence tending to establish that the original paper, which was last seen in the possession of the deceased, was executed by the parties thereto, and that Exhibit No. 2 was a copy of the original paper kept in the safe, and that the safe was taken from the factory to the residence of the deceased on James street in Rome. The witness Seeley testified that he took the paper out of the safe to copy it, and that he put the original back in the safe and locked up the safe ; that the safe was removed to the residence of the deceased, and that the witness helped remove it, and that the papers were taken out immediately before the safe was removed, and the paper was among them, and the papers were all put back in the safe, and that the safe was put into a wagon and removed to Slingerland's house ; and then adds : " This (Exhibit No. 2) is the copy of the paper I referred to and made. This paper is all in my handwriting and written by me as a copy of the original. The original of this paper had the signatures of Scott and Slingerland. The original was the same paper I had seen in New York and read ; the original had seals opposite the names. I could not tell in whose writing the original paper was ; it was not the writing of Slingerland or Scott. The original was the same one I had seen in New York and Rome. I did not know Armstrong's handwriting, but it purported to be witnessed by him as copy appears."

The issue in respect to whether the original paper existed executd between the parties was so important, and the testimony so conflicting in respect thereto, that we are not permitted to say that the exclusion of the testimony to which we have already referred was not injurious to the plaintiff. The principal fact has been found against him, as the referee says in his report, viz. : " There was no

contract entered into between George Scott, plaintiff in this action, and said Thomas B. Slingerland, deceased, as appears in the paper offered and received in evidence, marked Exhibit 2, and that the evidence fails to show that any cause of action stated in the complaint in this action existed in favor of the said plaintiff as against the said defendant."

We are not authorized to say that such evidence would not have benefited the plaintiff had it been received. We have looked carefully through the evidence and found there many facts and circumstances, and considerable oral evidence, tending to support the conclusion reached by the referee, while, on the other hand, from the quotations we have made, as well as from the further evidence found in the appeal book, it is quite apparent that there is great strength in the evidence offered by the plaintiff tending to show the existence of the original contract and its execution by the parties, and that Exhibit 2 was a correct copy thereof. We omit to express any impressions formed upon considering the conflicting evidence, inasmuch as we are of the opinion that the issue of fact should go down to another trial. By reason of the errors which we have pointed out in the rulings we are of the opinion that a new trial should be granted.

Judgment reversed and new trial ordered before another referee, with costs to abide the event.

BOARDMAN and FOLLETT, JJ., concurred.

Judgment reversed and new trial ordered before another referee, with costs to abide the event.